NOTICE: Under Supreme Court Rule 367 a party has 21 days after the

filing of the opinion to request a rehearing. Also, opinions are

subject to modification, correction or withdrawal at anytime prior

to issuance of the mandate by the Clerk of the Court. Therefore,

because the following slip opinion is being made available prior to

the Court's final action in this matter, it cannot be considered

the final decision of the Court. The official copy of the following

opinion will be published by the Supreme Court's Reporter of

Decisions in the Official Reports advance sheets following final

action by the Court.

                                    

              Docket No. 80374--Agenda 12--September 1996.

     THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ROBERT LOUIS

                           WOODARD, Appellee.

                    Opinion filed February 20, 1997.

     JUSTICE FREEMAN delivered the opinion of the court:

     The single issue presented by this appeal is whether a

defendant may be allowed on appeal the per diem monetary credit,

for incarceration prior to sentencing, provided under section 110--

14 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110--14

(West 1994)). We hold that the credit may be allowed on appeal.

                                BACKGROUND

     On October 24, 1993, defendant, Robert Louis Woodard, led

police on a high-speed chase along an interstate highway in his

pickup truck following a failure to pay for gasoline at a service

station. After police took defendant into custody, they discovered

cocaine in his shirt pocket. Defendant also spat on a police

officer.

     On January 26, 1994, defendant was convicted by a Pulaski

County jury of aggravated battery and unlawful possession of a

controlled substance. 720 ILCS 5/12--4(b)(6), 570/402 (West 1992).

On March 17, 1994, defendant was sentenced to concurrent prison

terms of three years for aggravated battery and one year for the

drug offense. Defendant was also ordered to pay fees and costs and

was assessed a $500 fine. A credit was applied by the trial court

reducing defendant's period of imprisonment by 114 days, the number

of days he served in custody prior to sentencing. Defendant did not

request, and the court did not order, that a per diem credit for

time in custody prior to sentencing, pursuant to section 110--14,

be applied against his $500 fine. 725 ILCS 5/110--14 (West 1994).

     On appeal, defendant claimed, inter alia, that he was entitled

to the per diem credit allowed under section 110--14. The State

maintained that defendant had waived the credit by failing to apply

for it. The appellate court noted that, despite the elimination of

the clerk notification requirement from section 110--14 by

amendment in 1994, nothing within the record indicated that

defendant had been notified of the credit at the trial level. 276

Ill. App. 3d 242. The court declined to follow People v. Toolate,

274 Ill. App. 3d 408 (1995), which held that the issue of a section

110--14 credit was waived on appeal based on a defendant's failure

to raise the issue in the trial court at sentencing or in a post-

trial motion. See also People v. Hillsman, 281 Ill. App. 3d 895,

896 (1996). Reasoning that it was "inherently unfair" to make

defendant keep records of the time he was incarcerated, the court

also expressed hesitancy to hold that a statutory right had been

waived, absent an affirmative showing of waiver on the record. The

court affirmed defendant's conviction and sentence, and modified

the judgment, pursuant to section 110--14, to reflect a $500 credit

against the $500 fine for the period of defendant's incarceration

prior to sentencing. 276 Ill. App. 3d at 248.

     We granted leave to appeal (155 Ill. 2d R. 315). Appellant

subsequently elected to supplement its petition with its appellate

brief pursuant to Supreme Court Rule 315(g) (155 Ill. 2d R.

315(g)). We now affirm.

                              SECTION 110--14

     Section 110--14 of the Code of Criminal Procedure of 1963

originally provided:

               "Any person incarcerated on a bailable offense who

          does not supply bail and against whom a fine is levied on

          conviction of such offense shall be allowed a credit of

          $5 for each day so incarcerated prior to conviction

          except that in no case shall the amount so allowed or

          credited exceed the amount of the fine." (Emphasis

          added.) Ill. Rev. Stat. 1965, ch. 38, par. 110--14.

     Effective October 1, 1977, the legislature amended the

provision to add (1) the phrase "upon application of defendant,"

and (2) the requirement that the circuit court clerk give written

notice of the credit to an eligible defendant at the time of his

conviction. Section 110--14 thus provided:

               "Any person incarcerated on a bailable offense who

          does not supply bail and against whom a fine is levied on

          conviction of such offense shall be allowed a credit of

          $5 for each day so incarcerated upon application of the

          defendant. The clerk of the court shall notify the

          defendant in writing of this provision of the Act at the

          time he is convicted. However, in no case shall the

          amount so allowed or credited exceed the amount of the

          fine." (Emphasis added.) Ill. Rev. Stat. 1977, ch. 38,

          par. 110--14.

     Effective January 1, 1994, the legislature again amended

section 110--14 by eliminating the language concerning clerk

notification, but retaining the language concerning application of

the defendant. Section 110--14 thus provided:

               "Any person incarcerated on a bailable offense who

          does not supply bail and against whom a fine is levied on

          conviction of such offense shall be allowed a credit of

          $5 for each day so incarcerated upon application of the

          defendant. However, in no case shall the amount so

          allowed or credited exceed the amount of the fine."

          (Emphasis added.) 725 ILCS 5/110--14 (West 1994).

     Defendant does not dispute that the 1994 amended version of

section 110--14 governs consideration of any credit in this case.

When a change of law merely affects the remedy or law of procedure,

all rights of action will be enforceable under the new procedure,

without regard to whether they accrued before or after such change

of law and without regard to whether or not the action has been

instituted, unless there is a savings clause as to existing

litigation. Maiter v. Chicago Board of Education, 82 Ill. 2d 373,

390 (1980).

     It is clear from the statute that any change in law resulting

from the 1994 amendment, which eliminated the clerk notification

requirement, could only have affected remedy or procedure and not

the substantive law. See Rivard v. Chicago Fire Fighters Union,

Local No. 2, 122 Ill. 2d 303, 310 (1988) (procedure embraces

pleading, evidence and practice, which are legal rules directing

course of proceedings to bring parties into court and course of

court afterwards). Further, the 1994 amendment became effective

without a savings clause. Accordingly, we find that although the

instant criminal acts occurred on October 26, 1993, the 1994

amended version of section 110--14 in effect on January 26, 1994,

the date of defendant's conviction, governs consideration of any

credit in this case.

                                 ANALYSIS

     The State claims that the appellate court erred in this case,

by awarding the per diem credit, because section 110--14 no longer

includes the clerk notification requirement which previously

provided the foundation for reviewing courts to excuse on appeal a

defendant's failure to apply for the credit at the trial level. The

State claims that the court has elsewhere correctly recognized the

intended effect of the 1994 amendment which eliminated the clerk

notification requirement. See Toolate, 274 Ill. App. 3d 408.

     The State takes the position that, under section 110--4, since

amendment in 1977, a defendant must apply for the per diem credit

at the trial level as a precondition to the statutory right to the

credit or else forfeit the right. Section 110--14 thus confers only

a limited statutory right to the credit that cannot be recognized

as a matter of course on appeal. The State contends that the

statutory evolution of section 110--4, legislative debates, and the

provision's inclusion among bail provisions shows that the

opportunity for obtaining the credit has always been limited to the

trial level. During the period between the 1977 and 1994

amendments, when the provision included the clerk notification

language, there existed a foundation for reviewing courts to excuse

a defendant's failure to timely apply at the trial level. People v.

Winkler, 77 Ill. App. 3d 35 (1979) (allowing credit on appeal,

though defendant failed to apply for credit upon conviction in the

trial court, where no indication of clerk notification as required

by statute). According to the State, with the elimination of the

clerk notification requirement by amendment in 1994, any basis for

excusing a defendant's failure to apply for the credit at the trial

level ceased to exist. The 1994 amendment, as shown by legislative

debates, did not affect that part of section 110--14 requiring that

a defendant apply at the trial level as a precondition to receiving

the credit.

     Defendant maintains that despite the 1994 amendment

eliminating the clerk notification requirement, the appellate panel

here correctly found that the defendant's failure to apply for the

credit in the trial court did not result in a waiver of the

statutory right to the credit on appeal. Defendant points out that

other appellate decisions have also taken this position. See People

v. Scott, 277 Ill. App. 3d 565, 566-67 (1996); People v. Nixon, 278

Ill. App. 3d 453, 460 (1996).

     According to defendant, under any amended version of section

110--4, a defendant is not limited to applying for the per diem

credit only at the trial level. Defendant maintains that the plain

language and meaning of section 110--14 reveals no legislative

intent to limit a defendant's opportunity for seeking the credit to

the trial level, nor any legislative intent that the failure to

apply for the credit in the trial court results in forfeiture of

the credit. Defendant argues that the State's interpretation of

section 110--14 and the effect of the 1993 amendment is contrary to

legislative practice and inconsistent with statutory construction

principles. Defendant points out that the appellate court has

consistently declined to find waiver of the credit and if the

legislature had intended to discontinue this practice by amending

the provision in 1993, it would have included such a waiver.

Instead, as shown by legislative debates, the 1993 amendment did

not affect section 110--14 in any way other than to relieve the

circuit clerk of the duty to notify defendants of the provision.

     The primary rule of statutory construction is to ascertain and

give effect to the intention of the legislature, and that inquiry

appropriately begins with the language of the statute. People v.

Hare, 119 Ill. 2d 441, 447 (1988). There is no rule of construction

which allows the court to declare that the legislature did not mean

what the plain language of the statute imports. Where an enactment

is clear and unambiguous, the court is not free to depart from the

plain language and meaning of the statute by reading into it

exceptions, limitations, or conditions that the legislature did not

express (see Solich v. George & Anna Portes Cancer Prevention

Center of Chicago, Inc., 158 Ill. 2d 76 (1994); see also In re

Estate of Swiecicki, 106 Ill. 2d 111, 120 (1985), quoting Belfield

v. Coop, 8 Ill. 2d 293, 307 (1956)), nor is it necessary for the

court to search for any subtle or not readily apparent intention of

the legislature (DiFoggio v. Retirement Board of the County

Employees Annuity & Benefit Fund, 156 Ill. 2d 377 (1993); cf.

People v. Welty, 275 Ill. App. 3d 10 (1995) (in absence of more

explicit statutory prohibition denying day-for-day credit against

periodic imprisonment for time served as result of given offense,

court loathe to create exception to credit provision by

implication)). Where the language of a statute is clear and

unambiguous, it will be given effect without resort to other aids

for construction. People v. Sheehan, 168 Ill. 2d 298 (1995).

Criminal or penal statutes are to be strictly construed in favor of

an accused and nothing should be taken by intendment or implication

beyond the obvious or literal meaning of statute. People v.

Shinkle, 128 Ill. 2d 480 (1989).

     An amendment is to be construed together with the original act

to which it relates. Illinois Chiropractic Society v. Giello, 18

Ill. 2d 306 (1960). Every amendment to a statute is presumed to

have a purpose, and a court must consider the language of an

amended statute in light of the need for amendment and the purpose

it serves. People v. Richardson, 104 Ill. 2d 8 (1984); see also In

re Marriage of Freeman, 106 Ill. 2d 290 (1985). A judicial

interpretation of a statute is considered part of the statute

itself until the legislature amends it contrary to that

interpretation. See Miller v. Lockett, 98 Ill. 2d 478 (1983).

     The express language of section 110--14, as amended in 1994,

provides that an eligible defendant "shall be allowed" a per diem

credit "upon application" for it. Section 110--14 is silent

concerning any time frame or procedural stage during which such

application either must or can be made. Furthermore, at no time

prior to the 1994 amendment did section 110--14 include such a

limitation. Subsequent to the 1977 amendment, and until the 1994

amendment, the provision provided that the circuit clerk was to

notify an eligible defendant of the credit "at the time he is

convicted." 725 ILCS 5/110--14 (West 1992). Within section 110--14

during this period, the phrase "at the time he is convicted"

clearly qualified the clerk notification requirement and not the

defendant application language. The phrase did not even appear

within the same sentence as the language pertaining to a

defendant's application. Furthermore, there is no indication from

the language of that version of the statute that the clerk

notification requirement was added by the legislature because

defendants were required, concomitantly, to apply for the credit at

the trial level.

     In addition, section 110--4 has carried no indication on its

face, throughout its evolution, that a defendant must apply at the

trial level for the credit, as a precondition to receiving any

benefit of the credit, or risk forfeiture of the credit. At all

relevant times, both before and subsequent to the 1977 and 1993

amendments, section 110--14 has expressly provided that an eligible

defendant "shall be allowed" the credit.

     Generally, the use of the word "shall" in a statute is

regarded as indicating a mandatory rather than a directory intent.

The rule is not, however, an inflexible one; the statute may be

interpreted as permissive, depending upon the context of the

provision and the intent of the drafters. See People v. Davis, 93

Ill. 2d 155, 162 (1982); People v. Youngbey, 82 Ill. 2d 556, 562

(1980).

     It is significant that the legislature, when enacting article

110 of the Code of Civil Procedure in 1963, was concerned with

inequities posed by the administration of bail in criminal cases.

See People ex rel. Carroll v. Frye, 35 Ill. 2d 604, 606 (1966);

Ill. Ann. Stat., ch. 38, art. 110, Committee Comments--1963, at

273-74 (Smith-Hurd 1980) (referring to discriminatory effect of

requiring bail of indigents who cannot even pay bond premiums). The

legislature sought to minimize, if possible, those inequities in

its enactment of article 110. Consequently, in light of these

concerns, section 110--14, like other sentencing provisions which

employ the word "shall" to confer a statutory right to credit (see

730 ILCS 5/5--8--7(b), (c) (West 1992)), would appear to

contemplate a mandatory monetary credit for incarceration prior to

sentencing on a bailable offense.

     The 1977 amendment added the phrase "upon application of the

defendant" to the sentence stating that the credit "shall be

allowed." The addition of this phrase made clear that a defendant

was to be allowed the credit upon his request for it. Cf. People v.

Emery, 190 Ill. App. 3d 171, 173 (1989) (clear purpose of 1977

amendment was to put defendant on notice of credit so he might

request it).

     Even assuming that a defendant's application was intended as

a precondition to the statutory right to the credit, section 110--

14 remained silent during this period concerning any time frame or

procedural stage for such application to occur. Moreover, the

language pertaining to timely clerk notification was subsequently

eliminated by the 1994 amendment, but no change was made to the

language concerning defendant application. In sum, section 110--

14's language does not indicate forfeiture of the statutory right

to the credit for failure to apply at the trial level.

     The State, however, reasons that if the absence of an express

statement that a defendant is limited to a trial level application

means that a defendant is not so limited, and may receive the

credit on appeal, then conversely, the absence of an express

statement that the credit can be awarded on appeal means that it

cannot be. We reject this reasoning.

     A court is not at liberty to read limitations and exceptions

into an unambiguous statute, regardless of how such restrictions

are characterized. Moreover, unlike the absence of an express

limitation of application for the credit to the trial level, the

absence of an express allowance of the credit on appeal does not

necessarily operate as a negation of that procedural avenue,

without more. Furthermore, it would have been unnecessary here for

the legislature to expressly allow the credit on appeal when

application for the credit was not expressly limited to the trial

level.

     The State also asserts that both this court and the appellate

court have acknowledged the time frame during which the credit

benefit is meant to operate. Thus, the court stated in People v.

Hare, 119 Ill. 2d 441, 444 (1988), that "[s]ection 110--14 of the

Code of Criminal Procedure of 1963 [citation] provides a $5 credit,

to be applied against a subsequently imposed fine." The appellate

court stated in People v. Smith, 258 Ill. App. 3d 261, 270 (1994),

that "for purposes of the application of section 110--14,

`conviction' includes the entry of sentence." The State reads too

much into these cases.

     Section 110--14 did not indicate that any credit was

necessarily awarded before the imposition of a fine. Section 110--

14 provided that persons incarcerated on a bailable offense and

"against whom a fine is levied on conviction of such offense shall

be allowed a credit." Ill. Rev. Stat. 1987, ch. 38, par. 110--14.

As was recognized in Smith, Hare appears to reflect an assumption,

perhaps because of its underlying facts, that the credit was given

only for periods of incarceration prior to trial. Moreover, Hare

was concerned with issues other than those presented here.

Consequently, one cannot rely on Hare's single statement of dictum

as authority that section 110--14 contemplates operation of the

credit only at the trial level.

     In Smith, the appellate court interpreted the term

"conviction" within section 110--14 to include, along with the

judgment, the entry of the sentence. The interpretation sought to

address whether the period of a defendant's incarceration after

trial could be credited against a fine. The interpretation did not

address any period during which the credit could be sought. Hare

and Smith thus do not represent authority for the interpretation of

section 110--14 urged here by the State.

     Viewed as a whole, the plain language of section 110--14 and

its amendments indicates the benefit of the credit is not limited

to persons who apply for it at the trial level. Cf. Hare, 119 Ill.

2d 441 (declining to interpret section 110--14 as limited to

persons who receive only a fine upon conviction or excluding

persons who have also received a sentence credit for time spent in

custody awaiting trial); Smith, 258 Ill. App. 3d at 268-69

(declining to interpret section 110--14 credit as limited only to

the period of incarceration before and during trial); People v.

Robinson, 172 Ill. 2d 452, 462-63 (1996) (declining to interpret

section 5--7--8(b) sentencing credit as limited to time not

credited against another sentence). The plain language of section

110--14 and its amendments also carries no indication that

application at the trial level is a statutory precondition to the

right to any credit. We do not find section 110--14 to be ambiguous

in this regard. Cf. Hare, 119 Ill. 2d at 447 (finding section 110--

14 to be unambiguous).

     We agree with defendant that the legislature has provided

expressly for procedural time limitation periods when it so

intends. See 725 ILCS 5/122--1 (West 1994) (post-conviction,

generally, must be filed within three years from date of

conviction); 725 ILCS 5/116--1(b) (West 1994) (written motion for

new trial must be filed within 30 days from entry of judgment); 730

ILCS 5/5--8--1(c) (West 1994) (a timely motion to reduce sentence

must be filed within 30 days after sentence imposed); 725 ILCS

5/116--2(a) (West 1994) (written motion for arrest of judgment must

be filed within 30 days from entry of judgment); 725 ILCS 5/114--

5(a) (West 1994) (motion for substitution of judge may be made

within 10 days after cause placed on judge's trial call). Also, the

legislature typically utilizes less oblique means when it intends

that a forfeiture of claims or rights occurs. See, e.g., 730 ILCS

5/5--8--1(c) (West 1994) (defendant waives right to challenge

correctness of sentence or other aspects of sentencing hearing is

claim not included in written motion to reduce sentence within 30

days); 720 ILCS 5/1--6(a) (West 1994) (objections of improper place

of trial are waived unless made before trial).

     The State acknowledges that absent some ambiguity, the task of

discerning legislative intent is normally limited to reading a

statute's plain language. The State, nevertheless, maintains that

the 1977 and 1994 amendments to section 110--14 represented a

material change of law, and that such a change allows for our

consideration of the legislative debates surrounding those

amendments.

     Generally a material change in the language of an unambiguous

statute creates a presumption of a change in legal rights, although

it can be rebutted by evidence of contrary legislative intent. See

State of Illinois v. Mikusch, 138 Ill. 2d 242, 252 (1990); Hare,

119 Ill. 2d at 450-51. To determine whether a right is being added

to or taken from the original act, or whether the provision is

being merely interpreted, circumstances surrounding the enactment

must be considered. See 1A N. Singer, Sutherland on Statutory

Construction §22.30, at 267 (5th ed. 1993); see also O'Connor v.

A&P Enterprises, 81 Ill. 2d 260, 271 (1980). If circumstances

indicate that the legislature intended to interpret the original

act, the presumption of change will be rebutted. O'Connor, 81 Ill.

2d at 271.

     Here, the State asserts that the 1977 amendment clarified the

existing precondition that defendants must apply for the credit at

the trial level before they receive the benefit of any credit.

Defendant does not argue the scope and effect of the 1977 amendment

inasmuch as he contends that the time limitation claimed by the

State has not been shown to exist on the face of the statute or its

amendments. Thus, neither party contends that the 1977 amendment

changed the law. As such, no issue is joined concerning whether the

1977 amendment is a substantive change in law or merely a

clarification of existing law which normally would necessitate

consideration of the legislative debates surrounding the amendment.

Cf. Varelis v. Northwestern Memorial Hospital, 167 Ill. 2d 449, 461

(1995) (referring to parties' oppositional positions); Mikusch, 138

Ill. 2d at 252 (same).

     Concerning the 1994 amendment, the State claims that it

changed the law, eliminating the basis on which to allow the credit

on appeal. Defendant, by contrast, argues that the amendment did

not change the law in that respect. Thus, the issue is joined with

respect to the 1994 amendment. In the circumstances presented here,

where consideration of legislative debate surrounding the

elimination of an oft-interpreted statutory requirement is

appropriate, we believe it is advisable to consider also

legislative debates surrounding the adoption of that requirement.

     The State claims that the legislative debates surrounding the

1977 amendment, explaining the notification requirement, indicate

that only a limited opportunity existed at the trial level for

seeking the credit, and that the failure to take advantage of that

opportunity resulted in forfeiture of the credit. The State

maintains that the debates show an intent to link the clerk

notification requirement with defendant application to ensure that

defendants apply for the credit at the trial level and thereby

avoid forfeiting it. Based on this linkage, the State argues

elsewhere in its brief that the phrase "at the time of conviction"

must be implied to modify language concerning allowance of the

credit "upon application of the defendant." According to the State,

the debates also indicate "in some way" that even before the

defendant application language was added, section 110--14

contemplated that the "opportunity" for the credit would be

forfeited unless the credit was applied for at the trial level. In

the State's view, the addition of the clerk notification

requirement in 1977 made plain that no opportunity for the credit

was available subsequent to trial level proceedings.

     A review of the legislative debates belies the State's

assertions. In the Illinois House of Representatives,

Representative Greiman remarked:

          "What's happening now because of the system is that

          they're not giving credit for time served. A man will

          serve two or three days then be let out, then get a fine

          imposed a month later. He doesn't know about this law

          that he is entitled to. Nobody is checking on it, the

          clerk doesn't ... in the courtroom doesn't think about it

          and so he ends up not getting credit for the time

          served[;] *** therefore, we want the clerk of the court

          to make a form to give ... to advise that defendant of

          his rights, that he has it and for the defendant then to

          in turn sit out the time that he has served. So that he

          will get appropriate credit against a fine." 90th Ill.

          Gen. Assem., House Proceedings, June 21, 1977, at 108

          (statements of Representative Greiman).

     In the Senate, Senator Carroll stated:

          "This bill deals with the five dollar credit to be given

          to people incarcerated other than for certain major

          crimes. The problem has been that most of them are not

          aware of the provisions of this nor is it capable for the

          county clerks or the clerks of the circuit courts of the

          various counties to enforce the provisions of the bill as

          it now stands for they don't always know at the time of

          trial who is on bail, et cetera. So this is a change in

          that to provide that the clerk shall notify the defendant

          in writing and then he will then make application based

          on that writing for the five dollar a day credit. This

          was brought to us by the circuit court clerks in what

          they feel will be an attempt to better expedite the

          meaning of the law that has been on the books ***." 80th

          Ill. Gen. Assem., Senate Proceedings, May 23, 1977, at

          47-48 (statements of Senator Carroll).

     This commentary does not indicate a concern by the legislature

with legal forfeiture of the credit. We agree with the State that

the commentary reveals the legislature's concern that defendants

were not taking advantage of an opportunity to apply for the

credit, and that the clerk notification requirement was intended to

prompt defendants to do so. We do not agree, however, that the

commentary indicates the legislature considered this to be a

legally limited opportunity to apply, or that defendants suffered

a legal forfeiture of the right to the credit by not taking

advantage of any practical opportunity to apply for it. The

commentary in no way speaks to the issue of any legal inability of

defendants to receive the credit through an appeal.    

     Both parties acknowledge that in 1994, the legislature did not

intend to change the aspect of section 110--14 pertaining to

defendant application by the elimination of the clerk notification

requirement. The State maintains, however, that the 1994 amendment

left defendant application intact as a statutory precondition. The

State insists the legislature intended that the credit be precluded

on appeal. The 1994 legislative debates reveal no such intent.

     Essentially, Representative Lang confirmed, when questioned by

Representative Wennlund, that the amendment deleting the clerk

notification requirement merely "relieves" the circuit clerk of the

duty to notify defendants. See 88th Ill. Gen. Assem., House

Proceedings, April 20, 1993, at 17 (statements of Representatives

Wennlund and Lund). These comments do not support the State's

position in the least.

     The State additionally claims that placement of section 110--

14 among bail provisions found in sections 110--11 through 110--18

of the Code of Criminal Procedure of 1963 (725 ILCS 5/110--11

through 110--18 (West 1992)), which the State claims concern

proceedings leading up to trial and for which appellate review is

expressly provided for, indicates an intent to preclude the credit

on appeal. We disagree.

     It is apparent that these provisions are grouped together not

on the basis of the procedural stage during which they are

applicable, but on the basis of the general subject matter, bail,

which they address. For instance, section 110--11 concerns bail on

a new trial (725 ILCS 5/110--11 (West 1992)) and section 110--16

addresses bail bond forfeiture for a defendant's absence at trial

(725 ILCS 5/110--16 (West 1992)). Section 110--14 is included here

because, as its title states, it concerns "[c]redit for

incarceration on bailable offense." 725 ILCS 5/110--14 (West 1992).

Also, the bail provisions the State cites as specifically providing

for appellate review concern matters involving judicial discretion

(see 725 ILCS 5/110--4, 110--5, 110--6 (West 1992)). The statutory

right to a per diem credit found in section 110--14, by its

language, is in the nature of a mandatory right subject to

assertion by a defendant. Thus, judicial discretion is not involved

in a decision to allow the credit.

     Citing a line of cases, emanating from Winkler, the State,

nevertheless, asserts that the appellate court has correctly

recognized the legislative intent in section 110--14 to preclude

the credit on appeal (see, e.g., People v. Stahr, 255 Ill. App. 3d

624, 627 (1994); People v. Childs, 226 Ill. App. 3d 915, 922-23

(1992)). When the legislature amended the statute in 1994, by

eliminating the clerk notification requirement, presumably it was

aware that reviewing courts had been relying on this foundation to

excuse the failure of the precondition, and the elimination of that

foundation was intended by the legislature to indicate that the

credit was precluded on appeal.

     Defendant relies generally on these same cases to assert that

the appellate court has consistently declined to find "waiver" of

a section 110--14 credit on appeal. Defendant argues that when the

legislature amended the statute in 1994, it was presumably aware of

this judicial practice and had the legislature intended that the

practice be discontinued, it would have included within the

provision an express limitation period that would operate

implicitly to waive any unasserted right to a credit. The failure

to include such a limitation means that it was not intended by the

legislature.

     Winkler is the seminal case recognizing the credit on appeal

during the period between the 1977 and 1994 amendments. Winkler

found that, although the defendant "failed to apply for the credit

upon conviction in the trial court," he would not be denied the

credit where there was no indication that he had been notified by

the circuit clerk in writing of the credit pursuant to section 110-

-14. The Winkler court modified the judgment to reflect a per diem

credit of $20 for the four days the defendant had spent in jail.

Winkler, 77 Ill. App. 3d at 36-37.

     Decisions within this period and subsequent to Winkler,

employed slightly different approaches. Several decisions, similar

to Winkler, acknowledged the defendant's failure to apply

previously for the credit, but consistently allowed the credit on

appeal based on the lack of any indication that the circuit clerk

notified the defendant of section 110--14. See People v. Roby, 169

Ill. App. 3d 187, 193 (1988) (failure to make timely application

does not preclude credit on appeal); People v. Johnston, 160 Ill.

App. 3d 536, 544 (1987); People v. Bratcher, 149 Ill. App. 3d 425,

430 (1986); People v. Smith, 133 Ill. App. 3d 613 (1985); People v.

Young, 96 Ill. App. 3d 634, 636 (1981). These decisions implied

that a defendant's application at the trial level was somehow

requisite to the credit, but they did not explain whether such

application preconditioned the right or constituted merely evidence

of the right's assertion. Unlike Winkler, these decisions did not

express that defendants were required to apply for the credit upon

conviction in the trial court.

     Other decisions during this same period discussed a

defendant's failure to apply for the credit at the trial level in

terms of waiver analysis, but consistently declined to find waiver

because there was no showing that the defendants were informed as

required by the statute. Again, unlike Winkler, these decisions did

not express that defendants were required to apply for the credit

upon conviction in the trial court. People v. Childs, 226 Ill. App.

3d 915, 922-23 (1992); People v. Sinnott, 226 Ill. App. 3d 923, 935

(1992) (no waiver of issue of credit for failure to present

argument at trial or in post-trial motion where no indication that

clerk informed defendant of entitlement); see also People v. Stahr,

255 Ill. App. 3d 624 (1994) (though defendant did not apply for

credit in trial court, "issue" not waived on appeal); People v.

Plante, 253 Ill. App. 3d 472 (1993) (same); People v. Jenkins, 251

Ill. App. 3d 1, 7 (1993); People v. Tippett, 232 Ill. App. 3d 921,

922-23 (1992); People v. Laster, 208 Ill. App. 3d 482, 483 (1990);

People v. Taylor, 84 Ill. App. 3d 467, 471 (1980); People v. Brown,

83 Ill. App. 3d 261, 262 (1980); see also People v. Mills, 239 Ill.

App. 3d 997, 999 (1993) (parties' stipulation to fine and costs

without mention of credits did not constitute waiver of statutory

credits).

     The State agrees with these decisions to the extent that they

view defendant application at the trial level as somehow requisite

to the credit. The State disagrees, however, that a defendant's

failure to apply for the credit at the trial level is simply a

matter of waiver; failure to apply for the credit at the trial

level forfeits the right to the credit.

     Based on a plain reading of section 110--14, we believe

Winkler interpreted section 110--4 incorrectly. A plain reading of

section 110--14 during the period between 1977 and 1994 does not

indicate that defendants were required to apply for the credit upon

their conviction in the trial court. That limitation pertained only

to the circuit clerks' obligations. The decisions which

subsequently followed Winkler avoided making this express

statement, and they are inconsistent and somewhat equivocal in

their treatment of defendants' failures to apply under the statute.

We believe the incorrect interpretation of section 110--14 by

Winkler contributed to the judicial inconsistency and uncertainty

in this area.

     Decisions subsequent to the 1994 amendment are not in

agreement regarding the effect of the legislature's elimination of

the clerk notification requirement. The State recommends People v.

Toolate, which found that elimination of the clerk notification

requirement allowed for application of the "normal rules" of waiver

of an issue on appeal. See Toolate, 274 Ill. App. 3d at 409.

Toolate held the issue of a section 110--14 credit was waived for

purposes of appeal because the defendant failed to raise the issue

in the trial court at sentencing or in a post-trial motion. Accord

People v. Hillsman, 281 Ill. App. 3d 895, 896 (1996). While not

agreeing that waiver analysis was appropriate, the State contends

Toolate correctly understood that the legislature intended with the

1994 amendment to preclude the credit on appeal. The State cites to

no decision that entirely supports its view of section 110--14

following the 1994 amendment.

     Two other post-1994 decisions, relied on by defendant, have

disagreed with the approach taken by Toolate, and instead viewed

section 110--14 as conferring a clear statutory right which is not

waived despite any failure to raise the "issue" at the trial level.

See Scott, 277 Ill. App. 3d at 566; Nixon, 278 Ill. App. 3d at 460.

The Scott court expressed its reluctance to find that the right to

the credit had been waived and stated that "[g]ranting the credit

is a simple ministerial act that will promote judicial economy by

ending any further proceedings over the matter." Scott, 277 Ill.

App. 3d at 566.

     We believe the approach taken in Scott and Nixon is correct.

As discussed previously, based on a plain reading of the language

of section 110--14, both before the 1994 amendment and subsequent

to it, the statutory right to a per diem credit is conferred in

mandatary terms while being subject to a defendant's application.

As such, the "normal rules" of waiver do not apply (see Toolate,

274 Ill. App. 3d at 409), and the right is cognizable on appeal as

a matter of course subject to a defendant's application for it. The

1994 legislative debates show that the elimination of the clerk

notification requirement did not affect this aspect of section 110-

-14. The 1994 amendment did make clear, by eliminating the clerk

notification requirement and its terms, that a defendant's

application for the credit was not intended to be conditioned by

the terms of the prior-included clerk notification requirement, and

that a defendant's statutory right to the credit is not intended to

turn, for purposes of review, on notice by the clerk, whether in

compliance with the statute or not.

     Notably, the mandatory credit in section 5--8--7(b) has been

treated similarly. See People v. Sizemore, 226 Ill. App. 3d 956

(1992) (comparing section 5--8--7(b) credit raised on appeal to

treatment of section 110--14 credit under same circumstances);

People v. Donnelly, 226 Ill. App. 3d 771 (1992) (because of

statutory right to credit, error regarding credit not waived for

failure to raise in trial court); People v. Beech, 202 Ill. App. 3d

576 (1990) (emphasizing that credit could have been raised on

appeal); People v. Bates, 179 Ill. App. 3d 705 (1989) (credit could

have been raised on appeal).

                                CONCLUSION

     We hold that a defendant may be allowed on appeal a per diem

credit pursuant to section 110--14 for incarceration prior to

sentencing. The judgment of the appellate court, modifying the

trial court's judgment of conviction, is affirmed.

                                         Appellate court judgment affirmed.

     JUSTICE MILLER, dissenting:

     I do not agree with the majority's conclusion that the per

diem monetary credit allowed against fines by section 110--14 of

the Code of Criminal Procedure of 1963 (725 ILCS 5/110--14 (West

1994)) may be obtained on appeal even though a defendant has not

first applied for the credit in the circuit court. In my view, such

a request must be made in the trial court, or else it is lost.

     The majority's interpretation of section 110--14 is contrary

to both the plain language and the legislative history of that

provision. The version of the statute applicable to this case took

effect January 1, 1994; it provides:

               "Any person incarcerated on a bailable offense who

          does not supply bail and against whom a fine is levied on

          conviction of such offense shall be allowed a credit of

          $5 for each day so incarcerated upon application of the

          defendant. However, in no case shall the amount so

          allowed or credited exceed the amount of the fine." 725

          ILCS 5/110--14 (West 1994).

     The majority believes that a defendant who fails to request

the credit in the circuit court may wait until the cause is on

appeal to seek the same relief from the reviewing court. I disagree

with the majority and would instead conclude that a defendant

forfeits the statutory entitlement if he does not apply for it in

the circuit court. See People v. Hillsman, 281 Ill. App. 3d 895

(1996) (finding waiver); People v. Toolate, 274 Ill. App. 3d 408

(1995) (same). In my view, the phrase "upon application of the

defendant" plainly contemplates that the defendant will request the

credit while his case is before the trial judge, and I do not

believe that the legislature intended that the matter of the credit

could be raised for the first time on review, without regard to any

prior request for it in the court in which the fine was imposed.

     The history of section 110--14 provides further proof that the

legislature intended for the credit to be forfeited if the

defendant did not make an appropriate request in the circuit court.

Before 1994, section 110--14 contained an additional sentence

requiring the circuit court clerk to "notify the defendant in

writing of this provision of the Act at the time he is convicted."

725 ILCS 5/110--14 (West 1992). Under that version of the statute,

as the majority opinion notes, the appellate court would excuse a

defendant's failure to raise the credit issue in the circuit court

if the record did not show that the circuit court clerk had

provided the necessary notice. See, e.g., People v. Stahr, 255 Ill.

App. 3d 624, 627 (1994); People v. Childs, 226 Ill. App. 3d 915,

922-23 (1992); People v. Roby, 169 Ill. App. 3d 187, 193 (1988);

People v. Winkler, 77 Ill. App. 3d 35, 37 (1979). Those decisions

suggest, of course, that procedural default of the credit issue

would have been the consequence of the defendant's failure to seek

the credit in the trial court if the clerk had provided the

necessary notice or, alternatively, if the statute had not required

that any notice be given at all. We must assume that the

legislature, when it later amended section 110--14, was aware of

the appellate court's longstanding interpretation of the statute.

See People v. Hickman, 163 Ill. 2d 250, 262 (1994). By eliminating

the requirement that the clerk provide notice, the legislature thus

removed the very ground on which defendants' default of the credit

issue was customarily excused.

     Given the text and history of section 110--14, I would

conclude that the legislature has intended to limit availability of

the per diem credit authorized by that provision to defendants who

apply for it in the circuit court.